## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

WESLEY LEE COOK,

      Plaintiff,

v.                            Case No. 8:19-cv-3051-TPB-SPF

LAURA H. DUNN, as personal representative
for the estate of Paul Patrick Dunn, OFFICER
DAVID BELL, FORMER CHIEF LARRY
GIDDENS, CITY OF LAKELAND, LAKELAND
CITY COMMISSION, and LAKELAND CITY
MANAGER TONY DELGADO,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART "DEFENDANTS' MOTION FOR SUMMARY JUDGMENT"

This matter is before the Court on "Defendants' Motion for Summary Judgment," filed on June 10, 2022.   (Doc. 64).   On June 30, 2022, Plaintiff Wesley Cook filed his response in opposition.   (Doc. 75).   On July 12, 2022, Defendants filed their reply.   (Doc. 97).   The Court held a hearing to address this matter on August 22, 2022.   (Doc. 119).   Upon review of the motion, response, reply, arguments, court file, and record, the Court finds as follows:

## Background[1]

On December 28, 2015, Cook and his then-girlfriend, Shannon Wood, got into a heated argument in their shared home.   As the argument escalated, Wood decided to leave the residence, but before she left, Cook took her cell phone and bag.

_____

[1] The Court construes the facts and evidence in light most favorable to Plaintiff for the purpose of ruling on the motion for summary judgment.

Planning to get a hotel room for the night and return home the next day, Wood stopped at a convenience store to call the Lakeland Police Department ("LPD") to ask for assistance in retrieving her belongings.   During her call to law enforcement Wood indicated that Cook had a gun and was a former law enforcement officer.

Officers Bell and Dunn responded to Cook's residence to resolve the domestic property dispute over the cell phone and bag.   The officers met Wood and directed her to wait at another location in her neighborhood while they went to the residence.   At around 9:00 p.m., the officers arrived at the residence where Cook was asleep.   Officer Dunn approached the residence with gun in hand, rang the doorbell, then knocked on the door, which had glass windows around it.   Cook woke up from the knocking but heard no announcement or warning of any kind that police were present.   After Officer Dunn knocked on the door, the officers moved into an ambush position behind a corner of the garage.

Cook grabbed his licensed firearm from his nightstand and headed to the door with his firearm behind his back, pointing toward the ground.   Still unsure of who was at the door, Cook reached to unlock the door.   Officer Dunn, without warning, fired two separate volleys of shots totaling nine rounds through the glass windows on the left side of the door, hitting Cook in his face, pelvis, chest, and side. Throughout the entire incident, Cook never exited the residence.

Cook was taken by ambulance to a hospital, where he underwent surgery. He ultimately spent twelve days in the hospital, part of the time in a coma, but he survived.   He sustained permanent injuries and disabilities, including the loss of his left eye and bullet fragments still lodged in his body.

After the incident at issue here, Officer Dunn died in an unrelated motorcycle accident.   Prior to his death, he was questioned about this shooting in connection with LPD's standard procedures when officers discharge their weapons.   Officer Dunn explained that he observed through the glass windows next to the door that Cook had a black object in his hand, and that Officer Dunn focused his flashlight on the object and observed it to be a gun.   Officer Dunn further stated that he instructed Cook to "drop the gun" several times.   Officer Dunn recalled during his statement that Cook observed him and knew Officer Dunn was there, but Cook did not drop the gun.   Instead, Cook proceeded to open the door and step into the doorway.   According to Officer Dunn, he feared he might be shot if he didn't act first, so he shot Cook.   Due to his position, Officer Bell was not in a position to see any of these things and has neither corroborated nor contradicted Officer Dunn's version of these particular events.   In addition, Officer Bell did not remember Officer Dunn making any demands to drop the gun prior to the shooting. Unfortunately for Defendants, due to Officer Dunn's untimely death, it is impossible for them to admit Dunn's important testimony under the Federal Rules of Evidence. As such, Officer Dunn's recorded interview (and his recollection of the events) has been excluded from this case and not considered in connection with the instant motion. (Doc. 124).

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A properly supported motion for summary

judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003). Because this case concerns the defense of qualified immunity, however, the Court "considers only the facts that were knowable to the defendant officers." *With v. Pauly*, 137 S.Ct. 548, 550 (2017) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015)).

<u>Analysis</u>

*Counts I and II –Violation of 42 U.S.C. § 1983 Pursuant to the Fourth Amendment against Officer Dunn– Unlawful Seizure and Excessive Force*

In Count I and II, Cook alleges that Officer Dunn violated his Fourth Amendment rights by shooting him through the front windows of his home while he was inside, not dangerous, and nonresistant. Officer Dunn moves for summary judgment as to the § 1983 claims in Counts I and II based on qualified immunity.

"Section 1983 creates a private cause of action for deprivations of federal

rights by persons acting under color of state law." *Laster v. City of Tampa Police Dept.*, 575 F. App'x 869, 872 (11th Cir. 2014). In section 1983 cases, when a defendant raises the issue of qualified immunity and demonstrates that he was acting within the scope of his discretionary authority, the plaintiff bears the burden of overcoming that defense. *See, e.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). A government official is completely protected from suit if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Importantly, "[t]he determination of whether a police officer's actions were constitutional must be undertaken from the perspective of a reasonable officer on the scene under the same conditions, rather than with the 20/20 vision of hindsight, as the former allows for proper appreciation of the fact that police officers are often forced to make decisions about the amount of force that is necessary in situations that are tense, uncertain, and rapidly evolving." *Smith v. LePage*, No. 1:12-CV-0740-AT, 2015 WL 13260394, at *1 (N.D. Ga. Mar. 31, 2015). A police officer will be entitled to qualified immunity if an objectively reasonable officer in the same circumstances could have believed that the police conduct was not excessive. *Vinyard*, 311 F.3d at 1346 (citing *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987)).

When analyzing whether a defendant is entitled to qualified immunity, the court considers two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated the plaintiff's

constitutional rights, and (2) whether the plaintiff's rights were clearly established. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011); *Hadley v. Gutirrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).

<u>Violation of Fourth Amendment Right</u>

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."   *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).   Although "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion," the Fourth Amendment clearly "encompasses the plain right to be free from the use of excessive force in the course of an arrest."   *Lee*, 284 F.3d at 1197.   "Our cases have 'established that unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment.'"   *Mighty v. Miami-Dade Cnty.*, 659 F. App'x 969, 973 (11th Cir. 2016) (quoting *Fils*, 647 F.3d at 1289).

Determining whether this right was violated "requires a balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government interests alleged to justify the intrusion." *Tolan*, 572 U.S. at 656.   When balancing these interests, the Eleventh Circuit instructs courts to "weigh the quantum of force employed against the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect actively resisted arrest or attempted to

evade arrest by flight." *Dukes v. Deaton*, 852 F.3d 1035, 1042-43 (11th Cir. 2017) (internal quotations omitted).

Cook asserts that Officer Dunn used excessive force when Officer Dunn shot him several times, from outside into Cook's own home, although Cook did not present any threat to the officers.   Here, viewing all facts in the light most favorable to Cook, there is a genuine issue of fact as to whether Officer Dunn violated Cook's constitutional rights.   As an initial matter, it should be noted that the officers were responding to a domestic property dispute, and "more force is appropriate for a more serious offense and less force is appropriate for a less serious one." *Vinyard*, 311 F.3d at 1347 (quotations omitted).   There is no contention that Cook committed a felony of a violent nature before they confronted him at his residence.   Under Plaintiff's version of events, which the Court accepts for the purpose of summary judgment, Cook was merely answering his door when he was shot while standing within his own home.   Officer Dunn did not announce his presence, advise Cook to drop his gun, or warn him that Officer Dunn would employ lethal force before Officer Dunn shot Cook.[2]   Cook was not a fleeing felon, and he posed no immediate threat to the officers.   Although officers in tense and dangerous situations are not required to wait until a suspect uses a deadly weapon to act to stop that suspect, under Cook's version of events, Cook did not present a danger sufficient to warrant the use of deadly force against him.   *See Mighty*, 659

---

[2] Had the undisputed evidence shown that Cook refused to comply with repeated demands to drop the weapon, the outcome here would likely have been different.   *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1168-69 (11th Cir. 2009).   However, viewing the facts in light most favorable to Cook, no such demands were made.

F. App'x at 973 ("[U]nprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspects' rights under the Fourth Amendment."); *Smith*, 2015 WL 13260394, at *16-20 (denying motion for summary judgment with respect to excessive force claim on basis of qualified immunity where there was genuine issue of fact as to necessity of force).

Thus, having considered the record, the Court cannot say that Officer Dunn's entitlement to qualified immunity is indisputable.   Perhaps physical evidence and witness testimony will support the officers' claims that the force used was reasonable and necessary.   Perhaps the weight of the evidence and testimony will support Cook's claims.   But it is not the Court's place to resolve this dispute. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences form the facts are jury functions, not those of a judge."   *Greer v. Ivey*, 767 F. App'x 706, 711-12 (11th Cir. 2019).   Cook has met his burden of showing the violation of a constitutional right that would preclude summary judgment on this issue.

<u>Violation of Clearly Established Right</u>

Cook must also show that the constitutional right was clearly established at the time of the conduct.   *See Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014).   A defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.   *Id*. at 779.

Here, Cook's Fourth Amendment right to be free from the use of deadly force while nonresistant in his own home was clearly established at the time of the

shooting.   The Eleventh Circuit has repeatedly held that the use of deadly force against a person who has done nothing threatening and never posed an immediate danger violates the Fourth Amendment.   *See, e.g.*, *Greer*, 767 F. App'x at 712; *Morton v. Kirkwood*, 707 F.3d 1276, 1283 (11th Cir. 2013); *Mercado v. City of Orlando*, 407 F.3d 1152, 1160 (11th Cir. 2005); *see also Swofford v. Eslinger*, 671 F. Supp. 2d 1289, 1309 (M.D. Fla. 2009) (denying qualified immunity where officer knew a property owner was likely lawfully armed on his own property and failed to give a warning or identify himself before shooting), *aff'd*, 395 F. App'x 559 (11th Cir. 2010).

Even if the right were not clearly established, in excessive force cases, the Eleventh Circuit recognizes "a narrow exception to the rule requiring particularized case law."   *Swofford*, 671 F. Supp. 2d at 1309 (citing *Hamilton v. City of Jackson, Alabama*, 261 F. App'x 182, 187 (11th Cir. 2008)).   To overcome a qualified immunity defense, a plaintiff may demonstrate, alternatively, "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law."   *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000).   An officer shooting, unprovoked, into a man's home – when that man posed no danger to the officers or others – would seem to lie at this core.

Therefore, Defendants' motion is denied as to Counts I and II.   However, Defendants are not foreclosed from asserting a qualified immunity defense at trial. *See Vaughan*, 343 F.3d at 1333.

***Count III – Failure to Intervene against Officer Bell – Violation of 42 U.S.C. § 1983 Pursuant to the Fourth Amendment***

In Count III, Cook alleges that Officer Bell violated his Fourth Amendment rights by failing to intervene before or during the shooting.   Officer Bell moves for summary judgment on the ground that he had no opportunity to intervene.

Although only Officer Dunn is accused of using any kind of force against Cook, Officer Bell may still be held liable under § 1983 if he was "present at the scene and . . . fail[ed] to take reasonable steps to protect the victim of another officer's use of excessive force."   *See Hadley*, 526 F.3d at 1330.   To be held liable for his nonfeasance, the officer must have been in a position to intervene but failed to do so.   *Id.* at 1330-31 (citing *Priester*, 208 F.3d at 924).

Officer Bell claims that he could not actually see from his position what was occurring when Officer Dunn began shooting.   Yet, Officer Bell was physically present at the scene and was arguably capable of observing Officer Dunn's use of force visually and auditorily.   He was within a very close range during the entirety of the encounter.   Although it is questionable whether a jury would find that Bell had the opportunity to intervene prior to the first volley of shots, that is a question for the jury to resolve.   Moreover, because there was a distinct lapse in time between the first and second volleys, there is a clear question of fact as to whether Bell could have intervened prior to the second volley.   *See Estate of Breedlove v. Leone*, No. 6:11-cv-2027-Orl-31TBS, 2013 WL 1703551, at *13 (M.D. Fla. Apr. 19, 2013).   Although a close factual call, there may have been an opportunity for Officer Bell to stop the alleged constitutional violation, and it will be for the jury to

make that determination.   The motion for summary judgment is denied as to Count

III.

### Count IV – Supervisory Liability/Policymaker Liability against Giddens, Delgado, and Lakeland City Commission – Violation of 42 U.S.C. § 1983

In Count IV, Cook alleges that Giddens, Delgado, and the Lakeland City

Commission are liable under a supervisory liability theory for ignoring a pattern

and history of abuses committed by police officers under their supervision.

Particularly, Cook alleges that the Defendants failed to investigate misconduct,

allowed cover-ups of misconduct, failed to adopt policies designed to protect officers

from suit, concealed information about misconduct, and hired officers without

proper vetting or post-hiring training and monitoring.

"It is well established in this Circuit that supervisory officials are not liable

under § 1983 for the unconstitutional acts of their subordinates on the basis of

respondeat superior or vicarious liability."   *Cottone v. Jenne*, 326 F.3d 1352, 1360

(11th Cir. 2003) (internal quotations omitted).   Rather, to establish supervisory

liability, "a plaintiff must show that the supervisor either directly participated in

the unconstitutional conduct or that a causal connection exists between the

supervisor's actions and the alleged constitutional violation."   *Keith v. DeKalb*

*Cnty.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014).

Cook does not allege that the identified supervisors personally participated in

the unconstitutional conduct.   As such, he is required to show a causal connection

between the supervisors' actions and the constitutional violations.   As the Eleventh

Circuit has explained

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.   Alternatively, the causal connection may be established when a supervisor's custom or policy. . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* (quoting *Cottone*, 326 F.3d at 1360).   To constitute widespread abuse, the deprivations must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."   *Id.* (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).   The standards required to establish liability are therefore "extremely rigorous."   *Id.* (quoting *Cottone*, 326 F.3d at 1360).

Here, Cook has not met that standard.   Cook points to no prior misuses of force by Bell, Dunn, or any other officers that would show the supervisors had any notice of the need to correct any alleged constitutional deprivations similar to his. Moreover, Cook points to no custom or policy of the supervisors that would result in deliberate indifference to constitutional rights or support an inference that the supervisors directed the officers to act unlawfully or knew that they would act unlawfully and failed to stop them.   Cook points to an expert report relying on comparisons to national standards and a single prior allegation of dishonesty against Dunn (that was dismissed in Dunn's favor), but there are no concrete facts connecting the supervisors to the kind of violation alleged.[3]   Defendants' motion for

---

[3] For example, Plaintiff complains about a "flawed" complaint policy system, which buried or did not make known past bad conduct by law enforcement.   But Plaintiff does not explain a sufficient causal connection – how this custom or policy resulted in a deliberate indifference to constitutional rights.

summary judgment is granted as to Count IV.

**Count V – Municipal Liability against The City of Lakeland – Violation of 42 U.S.C. § 1983**

In Count V, Cook alleges that the City of Lakeland is liable for his injuries. Defendants move for summary judgment as to Count V on the grounds that there are no material facts supporting the allegations that would support municipal liability.   Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).   A municipality can only be held liable, however, where "action pursuant to official municipal policy of some nature caused a constitutional tort;" it cannot be liable under § 1983 on a *respondeat superior* theory because it employs a tortfeasor.   *Id.* at 691.   "Supervisor liability arises only 'when the supervisor personally participates in the allege constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.'"   *Gross v. Jones*, No. 3:18-cv-594-J-39PDB, 2018 WL 2416236, at *4 (M.D. Fla. May 29, 2018) (quoting *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007)).   Consequently, "to impose § 1983 liability on a local government body, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the entity had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."   *Scott v. Miami-Dade Cty.*, No. 13-CIV-23013-GAYLES, 2016 WL

9446132, at *3 (S.D. Fla. Dec. 13, 2016).

To demonstrate a policy or custom, "it is generally necessary to show a persistent and wide-spread practice; random acts or isolated incidents are insufficient." *Id*. at *4. The requisite causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone*, 326 F.3d at 1360 (internal quotation omitted). "Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew the subordinates would act unlawfully and failed to stop them from doing so." *Id*. (internal quotation and citation omitted).

Cook does not present sufficient evidence from which a jury could reasonably conclude that any policy or custom of the City of Lakeland caused the constitutional violation in this case. For example, Cook claims that the City of Lakeland failed to train its law enforcement officers in resolving property disputes. Under certain limited circumstances, a municipality's failure to "train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). That being said, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). With regard to a failure to train claim, "a supervisor can be held liable for failing to train his or her employees 'only where

the failure to train amounts to deliberate indifference to the rights of the persons

with whom the [officers] come into contact.'"   *Keith*, 749 F.3d at 1052 (quoting *City*

*of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).   As such, a plaintiff asserting

a failure to train claim "must demonstrate that the supervisor had 'actual or

constructive notice that a particular omission in their training program causes [his

or her] employees to violate citizens' constitutional rights,' and that armed with

that knowledge the supervisor chose to retain that training program."   *Id.* (quoting

*Connick*, 563 U.S. at 61).

Cook does not allege, much less establish, a pattern of similar constitutional

violations by untrained employees.   *See Keith*, 749 F.3d at 1053.   The same is true

for the other policies identified – Cook does not sufficiently establish any custom or

policy that was the moving force behind the constitutional violation, and the single

incident here is not enough for this Court to find municipal liability.   *See Speight v.*

*Griggs*, 620 F. App'x 806, 810 (11th Cir. 2015) (citing *City of Springfield v. Kibbe*,

480 U.S. 257, 270-71 (1987)).   Defendants' motion for summary judgment is

granted as to Count V.

### *Count VI – Assault and Battery against Officer Dunn – Violation of 42 U.S.C. § 1983 Pursuant to the Fourth Amendment*

"A battery claim for excessive force is analyzed by focusing upon whether the

amount of force used was reasonable under the circumstances."   *Cutino v. Untch*,

79 F. Supp. 3d 1305, 1315 (S.D. Fla. 2015).   For the reasons stated in the Court's

analysis of Counts I and II, genuine issues of fact preclude summary judgment

regarding the reasonableness of Dunn's conduct.   The determination of whether the

force employed was reasonable is a question for the jury to resolve.   The motion is denied as to Count VI.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   "Defendants' Motion for Summary Judgment" (Doc. 64) is **GRANTED IN PART** and **DENIED IN PART.**

(2)   The motion is **GRANTED** to the extent that summary judgment shall be entered in favor of Defendants, and against Plaintiff, on Counts IV and V of the amended complaint (Doc. 20).   The Court will enter a final judgment once all claims have been resolved.

(3)   The motion is otherwise **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>24th</u> day of October, 2022.

---

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**