# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 01, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  22-13928-AA
Case Style:  Wesley Lee Cook v. David Bell, et al
District Court Docket No:  8:19-cv-03051-TPB-SPF

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in the clerk's office within the time specified in the rules. **A petition for rehearing must include a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13928

_____

WESLEY LEE COOK,

Plaintiff-Appellee,

*versus*

DAVID BELL,
Officer, Individually and official capacity as a member of the
Lakeland Police Department,
LAURA H. DUNN,
as Personal Representative for the
Estate of Paul Patrick Dunn,

Defendants-Appellants,

PAUL DUNN et al.,

2                    Opinion of the Court                  22-13928

                                                          Defendants.

—————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-03051-TPB-SPF

—————————————————

Before WILSON, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Officer David Bell and the Estate of Officer Paul Dunn appeal the district court's order denying summary judgment on qualified immunity grounds. After careful review and with the benefit of oral argument, we affirm in part and dismiss in part for lack of jurisdiction.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

On December 28, 2015, the Appellee, Wesley Lee Cook, had an argument with his girlfriend, Shannon Wood. As Wood was leaving the house, Cook grabbed her cell phone and backpack, so she left without them. Wood went to a nearby convenience store

---

[1] "[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]." *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). We accept these facts for summary-judgment purposes only. *See Cox Adm'r US Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

and called the police.  Officers Dunn and Bell both responded to the call and went to meet Wood at the convenience store.  Wood told the officers that Cook was a former law enforcement officer and that he had guns in the house.  Dunn and Bell then went to Wood's house to speak with Cook—both to retrieve Wood's phone and bag, and to make sure there was not a domestic violence situation on hand.

Dunn got out of his car and approached Wood's front door. Bell, who arrived in a separate car, also went to the front door. Dunn knocked on the door.  Bell testified that Dunn announced himself as police; Cook recalls hearing no such identification.  The entrance to the house was what Bell described as a "fatal funnel," meaning that there were walls on both sides of the door such that the officers could not stand to either side of the door—only directly in front of it.  The officers, therefore, "backed up to a safe position" near the corner of the attached garage.  Dunn took up post at the corner of the garage, "on the 90 where he's facing the door."  Bell was positioned next to Dunn in the driveway, and he testified that he could not see the door.  Cook, who had been sleeping but woke up to Dunn's knocking, grabbed his (licensed) gun from the nightstand and walked to the front door.  By the time he got to the door, the knocking had stopped.  Cook stood inside to the left of the door, where a strip of 6–8-inch-wide windows ran the full height of the door and began to unlock the door.  Bell heard the sound of the door handle moving and asked Dunn, "what is he doing?  Is he fucking with the door?"  Dunn turned around to look at Bell and said, "I don't know," then turned back to the door, yelled

"Gun!" and drew his firearm.  "The next thing [Bell] kn[e]w," shots
were fired.  Bell then realized he could not get past Dunn (towards
the door) "because of the stance that [Dunn] took between the wall
and the Explorer," so Bell started running around the Explorer in-
stead.  As he ran around the SUV, Bell radioed out "Shots fired,"
and he heard a second volley of shots ring out.  By the time he
reached the far side of the SUV, Bell had drawn his gun and could
see Cook standing in the doorway, naked, with a gun held loosely
in his right hand, pointed down towards the ground.  Bell ordered
Cook to drop the gun, but he stopped when he heard Dunn giving
the same command so that only one voice would be yelling.  Cook
complied and dropped his gun, and then he collapsed to the
ground.  Another officer who had arrived in the interim began ren-
dering aid to Cook, who was bleeding from multiple gunshot
wounds.  Cook was taken to the hospital where he underwent sur-
gery; he ultimately lost his left eye and suffered other permanent
injuries.  Cook's blood-alcohol level was .28 at the time of the
shooting, and he admitted that his intoxication, stress, and injuries
all could have impaired his memory.

      During this incident, Bell never saw Cook step out of the
house, advance towards the officers, or point his gun at the officers.
Indeed, all of the blood from Cook's wounds was inside the house,
not outside.  And the Lakeland Police Department investigators
who handled this police-involved shooting determined there was
no evidence that Cook had ever exited his home.  Cook testified
that, while he could not say with certainty that Dunn never spoke,
Cook did not hear anyone give any commands, did not hear anyone

say "gun," and did not hear anyone identify himself as police. Bell, for his part, did not testify that Dunn gave any warnings or commands before he opened fire.

Cook filed suit asserting multiple claims against Officers Dunn and Bell, along with other defendants who are not present in this appeal. He sued Dunn for excessive force and unlawful seizure under 42 U.S.C. § 1983 (Counts I and II) and for assault and battery under Florida law (Count VII). As to Bell, Cook raised one claim for failure to intervene under § 1983 (Count III).

On January 9, 2020, Dunn was killed in a motorcycle accident. On Cook's unopposed motion, the personal representative of Dunn's estate eventually substituted for Dunn as defendant.

After discovery, the Appellants moved for summary judgment on the basis of qualified immunity.[2] The district court held two hearings on the motion and ultimately entered an order denying qualified immunity. In the order, the district court found that there were genuine disputes of material fact as to whether Dunn violated Cook's constitutional rights and whether Bell had an opportunity to intervene. The district court also concluded that Cook's "right to be free from the use of deadly force while nonresistant in his own home was clearly established at the time of the shooting." This timely appeal followed.

_____

[2] The motion also raised other, unrelated arguments as to the other defendants. This appeal only addresses the qualified immunity issues as to Bell and Dunn.

## II.    STANDARD OF REVIEW

We review jurisdictional issues de novo. *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 848 (11th Cir. 2022).

This Court also reviews *de novo* an order denying summary judgment based on qualified immunity. *See Helm v. Rainbow City, Alabama*, 989 F.3d 1265, 1271 (11th Cir. 2021). "When considering a motion for summary judgment, including one asserting qualified immunity, 'courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [they must] credit the nonmoving party's version.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (quoting *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006)). "Summary judgment is appropriate if 'the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *McCullough v. Antolini*, 559 F.3d 1201, 1204 (11th Cir. 2009) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).

## III.    ANALYSIS

We have a threshold obligation to ensure that we have jurisdiction to hear an appeal. *See Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020). This Court usually has jurisdiction to review the decisions of a district court "only where the district court has disposed of all claims against all parties." *Hudson v. Hall*, 231 F.3d 1289, 1293 (11th Cir. 2000); *see also* 28 U.S.C. § 1291. As one exception to that general rule, we may hear "an interlocutory

appeal of the denial of qualified immunity where the disputed issue is whether the official's conduct violated clearly established law." *Hudson*, 231 F.3d at 1293 (quoting *Stanley v. City of Dalton*, 219 F.3d 1280, 1286 (11th Cir. 2000)). We may also hear appeals that raise mixed questions of law and fact. *English v. City of Gainesville*, 75 F.4th 1151, 1155–56 (11th Cir. 2023). But we lack jurisdiction to hear an interlocutory appeal that asks only "whether the district court erred in determining that there was an issue of fact for trial about the defendant's actions or inactions which, if they occurred, would violate clearly established law." *Id.* In other words, we lack interlocutory jurisdiction "where the only issues appealed are evidentiary sufficiency issues." *Id.*

Our two Appellants stand on different footing. Dunn, for his part, presents a purely legal issue on appeal. He argues, in sum, that even when we accept Cook's version of events, "[t]here was no materially similar case predating the shooting that would have put Dunn on notice that his actions were unconstitutional." Because this challenge lies at the heart of the legal question of clearly established law, we have jurisdiction to hear Dunn's interlocutory appeal.[3] *See Hudson*, 231 F.3d at 1293.

---

[3] Because have jurisdiction to hear Dunn's appeal of the Fourth Amendment claim, we also have jurisdiction over his appeal of Florida state-law immunity on Cook's state-law claim, which tracks the same analysis. *See Butler v. Gualtieri*, 41 F.4th 1329, 1335 (11th Cir. 2022) ("Florida's sovereign immunity law provides qualifying government officials with immunity from both suit and liability." (citing *Florida Highway Patrol v. Jackson*, 288 So. 3d 1179, 1185 (Fla. 2020)); *English*, 75 F.4th at 1156–57.

8                    Opinion of the Court                    22-13928

Bell, however, has raised the type of "evidentiary suffi-ciency" issue that we lack jurisdiction to hear in an interlocutory appeal.  He argues, for example, that he "was not in a position to observe and evaluate Dunn's use of force," and that he "had no rea-sonable opportunity to intervene."  These are factual questions, not legal ones.  For this reason, we lack jurisdiction to hear Bell's inter-locutory appeal and, therefore, we dismiss the appeal as to Bell.  *See English*, 75 F.4th at 1155–56.

We turn, then, to Dunn's appeal.  Dunn argues that the district court erred in denying him qualified immunity because, in his view, it was not clearly established that his conduct violated Cook's Fourth Amendment rights.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  By imposing liability only for violations of clearly established law, the defense of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To qualify for this immunity, an officer "must first prove that he was acting within the scope of his discretionary authority when

the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188,
1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479,
1487 (11th Cir. 1991)).  Once "the defendant establishes that he was
acting within his discretionary authority, the burden shifts to the
plaintiff to show that qualified immunity is not appropriate." *Lee*,
284 F.3d at 1194.  "To overcome a qualified immunity defense, the
plaintiff must make two showings." *Corbitt v. Vickers*, 929 F.3d 1304,
1311 (11th Cir. 2019).  First, "the plaintiff must establish that the
defendant violated a constitutional right." *Griffin Indus., Inc. v. Irvin*,
496 F.3d 1189, 1199 (11th Cir. 2007).  Second, "the plaintiff must
show that the violation was clearly established." *Id*.  Courts are
"permitted to exercise their sound discretion in deciding which of
the two prongs of the qualified immunity analysis should be ad-
dressed first." *Corbitt*, 929 F.3d at 1311 (quoting *Pearson*, 555 U.S. at
236).

   "The relevant, dispositive inquiry in determining whether a
right is clearly established is whether it would be clear to a reason-
able officer that his conduct was unlawful in the situation he con-
fronted." *Vinyard*, 311 F.3d at 1350 (quoting *Saucier v. Katz*, 533 U.S.
194, 202 (2001)).  The defendant must have fair notice of his con-
duct's unconstitutionality, derived from one of the following
sources: (1) obvious clarity; (2) broad holdings or statements of
principle in case law that are not tied to particularized facts; or (3)
fact-specific judicial precedents that are not readily distinguishable.
*Id*. at 1350–51.  "The critical inquiry is whether the law provided
[the officer] with 'fair warning' that his conduct violated the [the
plaintiff's rights]." *McClish v. Nugent*, 483 F.3d 1231, 1248 (11th Cir.

2007) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  In this Circuit, only the "decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law."  *Id.* at 1237.

"[I]n the end, we must still slosh our way through the fact-bound morass of 'reasonableness.'"  *Scott v. Harris*, 550 U.S. 372, 383 (2007).  "[A]t the summary judgment stage," however, "once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, the reasonableness of the officer's actions . . . is a pure question of law."  *Penley v. Eslinger*, 605 F.3d 843, 848–49 (11th Cir. 2010) (cleaned up and citing *Scott*, 550 U.S. at 381 n.8).

As the district court explained, when we take the facts in the light most favorable to Cook (as we are bound to do at this stage), Cook was doing nothing more than standing inside his own doorway when Dunn opened fire on him.  Viewing the evidence in the light most favorable to Cook, he was not suspected of having committed a felony, nor was he fleeing from officers or advancing towards them in a threatening way.  As the district court observed, perhaps trial will reveal evidence that supports the officers' claim that the force Dunn used was necessary, reasonable, and appropriate—and therefore did not violate Cook's rights—but that is a question for a jury to resolve, not this court.  We cannot say at this procedural stage that Dunn is entitled to qualified immunity on Cook's excessive force claim.

For these reasons, we affirm the district court's order as to Dunn.

**AFFIRMED in part and DISMISSED in part.**